Jennifer B. Zargarof (SBN 204382)
jzargarof@sidley.com
Geoffrey D. DeBoskey (SBN 211557)
gdeboskey@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

Attorneys for Defendants
SAKS INCORPORATED,
SAKS & COMPANY and
SAKS FIFTH AVENUE, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN TILL and MARY JOSEPHS, individually, and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>SAKS INCORPORATED, a Tennessee corporation; SAKS FIFTH AVENUE, INC., a Massachusetts corporation; SAKS & COMPANY, a New York corporation; and SAKS FIFTH AVENUE OFF FIFTH, ,<br><br>　　　　　Defendants. | Case No.  4:11-cv-00504-SBA<br><br>Assigned to: Hon. Saundra Brown  Armstrong<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DENY FLSA CERTIFICATION**<br><br>[Memorandum of Points and Authorities; Declaration of Jennifer B. Zargarof, and Appendix of Putative Class Member and Other Witness Declarations filed concurrently herewith]<br><br>[Complaint filed:  February 2, 2011]<br>[FAC filed:  March 8, 2011] |

LA1 2582022v.1

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, pursuant to the Court's September 22, 2012 Order (Dkt. 73), Defendants Saks Incorporated, Saks & Company, and Saks Fifth Avenue, Inc. ("Defendants") will seek an order from this Court to deny certification of Plaintiff's FLSA claims. This motion is based on the grounds that Plaintiffs' class allegations do not meet the requirements for collective treatment under the FLSA.

This motion is based upon this Notice, the Memorandum of Points and Authorities, the Declaration of Jennifer B. Zargarof, Appendix of Putative Class Member and Other Witness Declarations; and all of the pleadings, papers, and records on file herein, all matters upon which judicial notice may be taken, any oral argument that may be presented at a hearing, and upon such other matters as this Court deems just and necessary.

Dated:  October 23, 2012                         Sidley Austin LLP


                                                 By:   /s/Jennifer B. Zargarof
                                                       Jennifer B. Zargarof
                                                       Attorneys for Defendants

1   Jennifer B. Zargarof (SBN 204382)
    jzargarof@sidley.com
2   Geoffrey D. DeBoskey (SBN 211557)
    gdeboskey@sidley.com
3   SIDLEY AUSTIN LLP
    555 West Fifth Street, Suite 4000
4   Los Angeles, California 90013
    Telephone: (213) 896-6000
5   Facsimile: (213) 896-6600

6   Attorneys for Defendants
    SAKS INCORPORATED,
7   SAKS & COMPANY and
    SAKS FIFTH AVENUE, INC.

8

9                      UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11

12   DAWN TILL and MARY JOSEPHS,              )   Case No.  4:11-cv-00504-SBA
     individually, and on behalf of all others )
13   similarly situated,                       )   Assigned to: Hon. Saundra Brown  Armstrong
                                                )
14              Plaintiffs,                     )   **MEMORANDUM OF POINTS AND**
                                                )   **AUTHORITIES IN SUPPORT OF**
15   vs.                                        )   **DEFENDANTS' MOTION TO DENY**
                                                )   **FLSA CERTIFICATION**
16   SAKS INCORPORATED, a Tennessee            )
     corporation; SAKS FIFTH AVENUE, INC., a  )   [Notice of Motion and Motion; Declaration of
17   Massachusetts corporation; SAKS &         )   Jennifer B. Zargarof, and Appendix of Putative
     COMPANY, a New York corporation; and      )   Class Member and Other Witness Declarations
18   SAKS FIFTH AVENUE OFF FIFTH, ,            )   filed concurrently herewith]
                                                )
19              Defendants.                     )
                                                )
20                                              )   [Complaint filed:  February 2, 2011]
                                                )   [FAC filed:  March 8, 2011]
21                                              )
                                                )
22                                              )
                                                )
23                                              )
                                                )
24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND .............................................. 1

III.    ARGUMENT............................................................................................................ 2

      A.   It Is Plaintiffs' Burden To Establish That Collective Treatment Is Warranted ......... 3

      B.   Plaintiffs Cannot Meet Their Burden Because The Developed Factual Record Demonstrates That Individual Issues Preclude Collective Treatment ....................... 3

            1.   The More Rigorous Certification Standard Applies Because Of The Factual Record Developed During Extensive Discovery .............................. 3

            2.   Plaintiffs Cannot Show That They Are Similarly Situated With Respect To A Violation Of The FLSA ........................................................ 6

                  a.   Application of the FLSA exemption requires a fact-specific, individualized inquiry ........................................................................ 6

                  b.   Testimony from members of the putative class indicates that they performed different functions .................................................... 7

      C.   Certification Must Be Denied Even Under "First Stage" Analysis. ........................... 9

IV.    CONCLUSION ...................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Aguirre v. SBC Communs. Inc.*
   2006 U.S. Dist. LEXIS 22211 (S.D. Tex. Apr. 11, 2006) ..................................................9

*Ale v. Tennessee Valley Authority*
   269 F.3d 680 (6th Cir. 2002) ....................................................................................................7

*Bowman v. Crossmark*
   2010 WL 2837519 (E.D. Tenn. July 19, 2010) ........................................................................5

*Bramble v. Wal-Mart Stores, Inc.*
   2011 U.S. Dist. LEXIS 39457 (E.D. Pa. Apr. 12, 2011) ..........................................................3

*Buenaventura v. Champion Drywall, Inc.*
   2012 U.S. Dist. LEXIS 41390 (D. Nev. Mar. 27, 2012) ..........................................................5

*Davis v. Social Service Coordinators, Inc.*
   2012 U.S. Dist. LEXIS 122315 (E.D. Cal. Aug. 27, 2012) ......................................................7

*Gromek v. Big Lots, Inc.*
   2010 WL 5313792 (N.D. Ill. Dec. 17, 2010) ........................................................................10

*Hernandez v. United Auto Credit Corp.*
   2010 WL 1337702 (N.D. Cal. Apr. 2, 2010) ............................................................................6

*Hill v. R+L Carriers, Inc.*
   2011 U.S. Dist LEXIS 27997 (N.D. Cal Mar. 3, 2011) ............................................................9

*Hinojos v. Home Depot, Inc.*
   2006 U.S. Dist. LEXIS 95434 (D. Nev. Dec. 1, 2006) ..................................................4, 5, 6

*Holt v. Rite Aid Corp.*
   333 F. Supp. 2d 1265 (M.D. Ala. 2004) ..................................................................................7

*Jenkins v. The TJX Companies, Inc.*
   2012 U.S. Dist. LEXIS 46394 (E.D.N.Y. Mar. 31, 2012) ....................................................3, 10

*Li v. A Perfect Franchise, Inc.*
   2011 WL 4635198 (N.D. Cal. Oct. 5, 2011) ..........................................................................10

*Mike v. Safeco Ins. Co. of Am.*
   274 F. Supp. 2d 216 (D. Conn. 2003) ......................................................................................7

*Misra v. Decision One Mortg. Co., LLC*
   673 F. Supp. 2d 987 (C.D. Cal. 2008) ......................................................................................4

*Pfol v. Farmers Ins. Grp.*,
  2004 U..S. LEXIS 6447 (C.D. Cal. March 1, 2004).........................................................*passim*

*Ray v. Motel 6 Operating, L.P.*
  1996 U.S. Dist. LEXIS 22565 (D. Minn. 1996) ........................................................................4

*Smith v. Micron Electronics, Inc.*
  2005 WL 5336571 (D. Idaho 2005) .........................................................................................2

*Smith v. T-Mobile*
  2007 U.S. Dist. LEXIS ...............................................................................................4, 5, 6

*Smith v. T-Mobile*
  2007 WL 2385131 (C.D. Cal. 2007) .......................................................................................3, 4

*Trinh v. JP Morgan Chase & Co.*
  2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) .........................................................................10

*Vasquez v. Vitamin Shoppe Industries Inc.*
  2011 U.S. Dist. LEXIS 74376 (S.D.N.Y. Jul. 11, 2011)...........................................................3

**OTHER AUTHORITIES**

29 C.F.R. § 541.100, *et seq.* ....................................................................................................6

29 C.F.R. § 541.700...................................................................................................................7

29 C.F.R. § 541.102...................................................................................................................8

FRCP Rule 23 ...........................................................................................................................1, 2

# I.  **INTRODUCTION**

Since the initial complaint was filed in February of 2011, the Parties have completed dozens of depositions, exchanged numerous sets of written discovery, interviewed putative class members across the nation and otherwise completed the pre-certification discovery related to the California and federal Fair Labor Standards Act ("FLSA") "classes" alleged in Plaintiffs' operative complaint. Significantly, Plaintiffs have had telephone numbers and addresses for the nationwide putative class for nearly a year. Much of the evidence resulting from these extensive efforts is already before the Court in connection with Plaintiffs' motion for Rule 23 certification of a California class. This intensive investigation and discovery resulted in dozens of declarations by the Parties and a well-developed factual record sufficient to warrant the rigorous analysis of whether collective treatment under federal law is warranted. Therefore, as discussed at the initial case management conference and as provided in this Court's September 22, 2012 order (Dkt. 73), Defendants respectfully request that the Court order that Plaintiffs' nationwide FLSA claims cannot proceed on a collective basis.

As with the smaller group in California, the four or more different job categories in Plaintiffs' class definition perform the job in significantly different ways in the over 60 Off 5th locations throughout the country. Indeed, the distinctions between the managers at issue across the country are even more stark than those within California. Notably, Plaintiffs' former store in Petaluma has a sales volume one-fourth the size of the Off 5th store that is a large international tourist attraction outside of Manhattan. Consistent with its size, there are double the putative class members at the larger store and, therefore, the nature and mix of job duties is different from what Plaintiffs' claim to have experienced. Even among managers who have worked in the same or similar stores, the type of duties and the manner in which they are performed varies substantially. Consequently, Plaintiffs cannot meet their burden to show that collective treatment is warranted.

# II.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Dawn Till and Mary Josephs filed this action over a year and a half ago, asserting that they and other Off 5th managers were improperly classified as exempt from overtime in violation of the FLSA and state law. (Dkt. 1). In their complaint, Plaintiffs seek certification of a purported nationwide collective action under the FLSA and a purported California class action under FRCP

LA1 2581873v.4

1  Rule 23. (Dkt 5). The purported FLSA collective action is defined as "all persons who are or have

2  been employed by defendants as Assistant Managers at Saks Off Fifth stores", including employees

3  in four different positions: Merchandise Team Managers, Selling and Service Managers,

4  Department Managers, and Assistant General Managers of Operations. (Id.). On May 18, 2011, this

5  Court conducted a status conference and entered a scheduling order that provided the parties time to

6  complete certification-related discovery and set a deadline for the parties to seek a ruling regarding

7  certification of an FLSA collective action and certification of a Rule 23 class action. (Dkt. 13;

8  Zargarof Decl. ¶ 2). Plaintiffs and Defendants then engaged in extensive discovery involving

9  numerous sets of written discovery addressing all key issues in Plaintiffs' putative FLSA nationwide

10  collective action – including all job descriptions and job requirements of the positions at issue;

11  nationwide witnesses; reasons Defendants believe the positions are correctly classified as exempt;

12  putative class member contact information; pay data; scheduling systems; labor budgets; and policies

13  relating to the employees at issue. (Id. ¶ 3). Additionally, Plaintiffs deposed Defendants' witnesses

14  on over 20 topics, each of them nationwide in scope, and the Parties have collectively deposed

15  Plaintiffs and seven other putative class members. (Id. ¶ 4). Plaintiffs have also had the personal

16  contact information for all putative class members nationwide for nearly a year. (Id. ¶ 5). In

17  connection with their briefing on certification, including vigorous opposition to Defendants initial

18  motion to deny certification of an FLSA collective action, Plaintiffs have submitted 17 declarations

19  from putative class members, 11 of which are from individuals who worked outside of California.

20  ### III.   ARGUMENT

21       Although the standard for class certification under Rule 23 differs somewhat from that of

22  conditional certification under the FLSA, Plaintiffs' claims should be nevertheless precluded from

23  proceeding as a collective action based on the same set of divergent facts outlined in Defendant's

24  Opposition to Plaintiff's Motion for Class Certification. (See Dkt. 78). The fundamental inquiry in

25  determining whether a collective action is appropriate depends on whether or not the plaintiffs are

26  "similarly situated" such that they were subjected to a single illegal policy, plan, or decision. *Smith*

27  *v. Micron Electronics, Inc.*, 2005 WL 5336571, at *2 (D. Idaho 2005). The "mere classification" of

28  a group of employees as exempt under the FLSA "is not by itself sufficient to constitute the

necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." *Jenkins v. The TJX Companies, Inc.*, 2012 U.S. Dist. LEXIS 46394, at *13 (E.D.N.Y. Mar. 31, 2012); *Vasquez v. Vitamin Shoppe Industries Inc.*, 2011 U.S. Dist. LEXIS 74376, at *12 (S.D.N.Y. Jul. 11, 2011); *Bramble v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 39457, at *15 (E.D. Pa. Apr. 12, 2011).  Rather, the employees must be similarly situated in a manner that permits the Court to make liability determinations on a collective basis, which in this case constitutes the expected and actual duties performed by the employees on a day-to-day basis within the context of each person's individualized store environment.

Typically, certification of collective actions occurs in a two-step process; conditional certification which generally occurs prior to discovery; and then decertification after discovery. Here, however, because pre-certification discovery is complete and the evidence amply demonstrates that Plaintiffs can not articulate a common plan or policy that allows for adjudication by representative proof due to the individualized inquiries required, certification should be denied.

**A.     It Is Plaintiffs' Burden To Establish That Collective Treatment Is Warranted**

Even though Defendants are the moving party, the burden rests at all times with Plaintiffs to prove that the individual class members are similarly situated for purposes of the FLSA. *Pfol v. Farmers Ins. Grp.*, 2004 U..S. LEXIS 6447, at *10-11 (C.D. Cal. March 1, 2004) ("Plaintiff bears the burden of . . . present[ing] evidence that all putative members were paid similarly and performed similar job duties.  In other words, since Plaintiff alleges in his Complaint that he was not exempt from overtime pay . . . , he must demonstrate that he is similarly situated to the other [class members] he seeks to represent with regard to this issue.")

**B.     Plaintiffs Cannot Meet Their Burden Because The Developed Factual Record Demonstrates That Individual Issues Preclude Collective Treatment**

1.     The More Rigorous Certification Standard Applies Because Of The Factual Record Developed During Extensive Discovery

The fundamental inquiry in determining whether a collective action is appropriate depends on whether or not the plaintiffs are "similarly situated." *Smith v. T-Mobile*, 2007 WL 2385131, at *7-8 (C.D. Cal. 2007).  Courts apply different standards for evaluating the propriety of certification,

1   depending on the relative stage of the litigation. *Id.* at *8-9; *see also Hinojos v. Home Depot, Inc.*,

2   2006 U.S. Dist. LEXIS 95434, at *7 (D. Nev. Dec. 1, 2006). Under the two-step approach, in the

3   early stages of litigation when only "minimal evidence" is available to the court, the first step is for

4   the court to decide, "based primarily on the pleadings and any affidavits submitted by the parties,

5   whether the potential class should be given notice of the action." *Smith v. T-Mobile*, 2007 U.S.

6   Dist. LEXIS at *7 (quoting *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986 (C.D. Cal. 2006));

7   *Pfol*, 2004 U.S. Dist. LEXIS at *8. At this stage, Plaintiffs have the burden of establishing a

8   "unifying nexus among plaintiffs that would lend itself to a collective action approach," such as an

9   illegal "common practice, policy or culture," *Hinojos*, 2006 U.S. Dist. LEXIS at *6; *see e.g., Misra*

10  *v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 993 (C.D. Cal. 2008).

11       However, where, "substantial discovery" was conducted, courts may skip the first-step

12  analysis and "examin[e] the factual record" developed during discovery under a more rigorous

13  standard to determine whether plaintiffs are in fact "similarly situated." *Smith v. T-Mobile*, 2007

14  U.S. Dist. LEXIS at *10-11 (with discovery as to class issues complete, court applied more rigorous

15  "second tier" analysis; *Pfol*, 2004 U.S. LEXIS at *9 (noting extensive discovery, and finding it was

16  therefore appropriate to proceed directly to second step analysis; certification denied); *Hinjojos*,

17  2006 U.S. Dist. LEXIS at *7 (applying second step analysis, noting that it was clear that named

18  plaintiffs were not similarly situated, and that the action would not be manageable); *Ray v. Motel 6*

19  *Operating, L.P.*, 1996 U.S. Dist. LEXIS 22565 at *9 (D. Minn. 1996) (declining to apply "lenient

20  standard at the notice stage" because facts before the Court are extensive").

21       Here, not only has substantial discovery been conducted, but discovery as to class issues is

22  complete pursuant to the initial case management conference wherein the Court set deadlines to file

23  motions regarding certification/collective treatment based on when the Parties stated they could

24  complete the needed discovery. (Dkt. 13). Plaintiffs and Defendants have responded to numerous

25  sets of written discovery addressing all key issues in the nationwide case – including all job

26  descriptions and job requirements of the positions at issue, nationwide witnesses, reasons

27  Defendants believe the positions are correctly classified as exempt, putative class member contact

28

1   information, pay data, scheduling systems, labor budgets and policies relating to the employees at

2   issue. (Zargarof Decl. ¶ 3).  The Parties' responses have not been limited to the California class

3   members or California issues, but have, in fact, been nationwide in scope. (Id.)  In addition,

4   Plaintiffs have deposed corporate representatives on over 20 topics regarding all features of the

5   exemption at issue, including 30(b)(6) topics relating to Plaintiffs' theories that the employees at

6   issue are improperly classified as exempt allegedly because of corporate directives dictating what

7   they do and limited labor budgets set by corporate. (Id. ¶ 4).  Defendants have also deposed both

8   Plaintiffs and the Parties have collectively deposed seven additional putative class members. (Id..

9   Furthermore, Plaintiffs have had the contact information for every putative class members

10  nationwide for nearly a year and have already interviewed putative class members across the nation,

11  submitting declarations from 17 putative class members, including 11 individuals from outside

12  California. (Id. ¶ 5).  Therefore, Plaintiffs have already availed themselves of the purpose for

13  conditional certification – notice to the putative class to allow for communication with potential

14  members and discovery for presentation to the Court as to whether collective action is appropriate.

15      Plaintiffs pled a putative nationwide collective action case and subjected Defendants to the

16  burdens attendant to pre-certification nationwide discovery.  They have likewise had full access to

17  the putative class and gathered testimonial and documentary evidence from these individuals.  The

18  evidence adduced establishes that the individuals encompassed by the putative nationwide

19  collective action are not similarly situated.  Therefore, because Plaintiffs already have contact

20  information for the nationwide putative class and class discovery is complete, the Court should

21  "promote judicial economy" by applying the more rigorous standard for certification of an FLSA

22  collective action. *Bowman v. Crossmark*, 2010 WL 2837519, at *5 (E.D. Tenn. July 19, 2010). [1]

23

24

---

[1] *See, e.g., Pfohl*, 2004 U.S. LEXIS at *9 (applying rigorous standard where "discovery has been undertaken relating to
25  the issues of certification of this action as a collective action"); *Buenaventura v. Champion Drywall, Inc.*, 2012 U.S.
Dist. LEXIS 41390, at *36 (D. Nev. Mar. 27, 2012) (same); *Smith v. T-Mobile*, 2007 U.S. Dist. LEXIS at *11-12
26  ("with discovery as to class issues concluded," including discovery "seeking evidence of a corporation-wide policy or
practice of FLSA violations," "the Court is in fact in a position to also apply the more rigorous 'second tier' analysis");
27  *Hinojos*, 2006 U.S. Dist. LEXIS, at *7 ("sufficient evidentiary record" compelled application of the more rigorous
standard).

28

1
2.      Plaintiffs Cannot Show That They Are Similarly Situated With Respect To A
        Violation Of The FLSA

2

3          Under the more rigorous standard, courts consider "(1) the disparate factual and

4    employment settings of the individual plaintiffs; (2) the various defenses available to defendants

5    with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Smith v. T-*

6    *Mobile*, 2007 U.S. Dist. LEXIS at \*10 (citing *Pfol*, 2004 U.S. Dist. LEXIS at \*2-3). Thus, "where

7    FLSA claims require significant individual determinations and considerations, they are

8    inappropriate for conditional certification under section 216(b)" *Hinjojos*, 2006 U.S. Dist. LEXIS

9    at \*7-8 ("The Court does not believe this action is manageable at trial because of the need for

10   individualized determinations to resolve the claims of each plaintiff. . . . This suggests the need for

11   separate mini-trials to resolve each individual's claim. Such a result is the antithesis of collective

12   action treatment.") Certification of a collective action is improper if the claims would require

13   separate inquiry into each potential plaintiff's work experience. *See, e.g., Hernandez v. United*

14   *Auto Credit Corp.*, 2010 WL 1337702, at \*5 (N.D. Cal. Apr. 2, 2010) (decertifying collective action

15   where the plaintiffs had "substantially different employment experiences" and "the procedural

16   advantages of a collective action cannot be realized"); *Pfohl*, 2004 WL 554834 at \*10 (where "the

17   exempt or non-exempt status of hundreds of [insurance claims adjusters] would need to be

18   determined on an employee-by-employee basis," certifying collective action would be "inefficient

19   and impractical"). As set forth in Defendants Opposition to Plaintiffs' Motion for Class

20   Certification (Dkt.78) and below, collective treatment is unwarranted in this case.

21
             a.      Application of the FLSA exemption requires a fact-specific,
                     individualized inquiry

22

23          The executive exemption under the FLSA turns on whether an employee's "primary duty" is

24   management. 29 C.F.R. § 541.100, *et seq*. Determination of an employee's primary duty must be

25   based on all the facts in a particular case, including (1) the relative importance of exempt duties as

26   compared with other types of duties, (2) the amount of time spent performing exempt work, (3) the

27   freedom from direct supervision, and (4) the difference in wages paid to hourly associates versus

28

executives. 29 C.F.R. § 541.700. Thus, the exemption requires a fact-specific inquiry into each employee's actual job duties and responsibilities. *See Davis v. Social Service Coordinators, Inc.*, 2012 U.S. Dist. LEXIS 122315, at *23 (E.D. Cal. Aug. 27, 2012) ("[W]hether employees are entitled to overtime compensation under the FLSA depends on an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria"); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1271 (M.D. Ala. 2004) ("Because the application of the executive exemption for merits purposes will require a fact-intensive determination, it appears to the court that the similarly situated inquiry also requires an examination of day-to-day tasks."); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (denying motion for conditional certification, finding that the nature of the plaintiff's claim, because it would ultimately turn on evidence relating to day-to-day tasks, precluded proceeding on a collective basis.); *Ale v. Tennessee Valley Authority*, 269 F.3d 680, 688 (6th Cir. 2002) (the "key to a determination of whether an employee is covered" by an FLSA exemption is what the employee "**actually** does on a day-to-day basis.") (emphasis in original; quotations omitted).

> b. <u>Testimony from members of the putative class indicates that they performed different functions</u>

A comparison of Plaintiffs' circumstances with those of other managers shows a lack of similarity that precludes adjudication of this case as a FLSA collective action. For example, Ms. Josephs claims that she <u>never</u> directed associates about where they should be and what they should be doing. (Josephs Depo., p. 216:6-10.) Other managers in the same position stated that directing their teams was a significant and even primary focus of the job. (See, e.g., Giddings Decl., ¶ 10; Ball ¶ 12; Baronni, ¶9.) Likewise, the manager who replaced Ms. Josephs strives to meet the goal of "right people, right place" in "training, counseling, evaluating and directing work" which allows her to spend an estimated 90% of her time on purely managerial tasks. (Nietzo Decl., ¶ 4; Nietzo Supp. Decl., ¶ 8.) In another example, Ms. Josephs claims that she only did initial interviews to ask about availability and that she did not give her opinion about whether the applicant should be hired (nor was it solicited, according to her). (Josephs Depo., p. 83:13-25.) In contrast, other mangers who held her exact same position (including plaintiffs' own declarant and the manager in the exact

7

1    same store) say that they <u>did</u> participate in the hiring process and <u>did</u> make hiring recommendations

2    and decisions.  (See, e.g., Dkt. 47 ¶ 15, Lighthizer ¶ 6, Nzieto ¶7; Philp ¶ 6; Pinales ¶ 5.)  This is

3    significant since hiring is one of the specifically enumerated functions relevant to the exemption

4    analysis.  See 29 C.F.R. § 541.102.  As to Ms. Till, she testified that she did not direct her team as to

5    the placement of merchandise on the floor and assumed they just knew what to do.  (Till Depo., p.

6    120:19-121:2.)  In contrast, other managers report that they were responsible for directing work and

7    setting priorities (see, e.g., Campbell ¶5, Gaines ¶16, Hayes ¶ 5).

8         The differences among the duties described in just the declarations submitted by Plaintiffs

9    also reveal significant variation among the tasks performed by putative class members.  For

10   example, while some declarants reported responsibilities related to scheduling (Dkt. 55 ¶ 18 (1-2

11   hours/week); Dkt. 48 ¶ 13 (2-3 hours/week); Dkt. 54 ¶ 13 (5-8 hours/week); Dkt. 47 ¶ 10 (10-12

12   hours/week)), others did not (Dkt. 46 ¶ 13 ("I did not create the schedule for any employees at my

13   store.", Dkt. 53 ¶ 13 ("I did not participate in … scheduling of hourly associates").  Also, some

14   declarants reported that they disciplined their employees (Dkt. 39 ¶ 20, Dkt. 55 ¶ 19), while others

15   claimed they had no authority to do so (Dkt. 46 ¶ 14; Dkt. 45 ¶ 17).

16        Looking at both sides' declarations reveals that the managerial job duties associated with

17   these positions and the time spent on various job duties vary based on operational factors, such as

18   the volume and flow of business, the size and layout of the store, the season, and community

19   events, as well as "human" factors such as the personal style of both the manager and Store

20   Director.  For example, the layout of the Ontario store is not like any of the other Off 5th locations.

21   (Manning Decl., ¶ 10.)  The manager must make significant departures from the merchandise

22   guidelines.  (Id.; see also Henderson ¶ 2 ("The store in Ellenton is shaped as a hexagon … Because

23   my store is different and smaller, I am constantly using my independent judgment to create the

24   store's visual layout."))  Similarly some managers have to decide the best way to utilize unique

25   fixtures and include them in merchandise plan, whereas other stores can more closely stick to the

26   guideline without spending significant time on adapting it.  (Hayes Decl., ¶ 4).  Another manager

27   devoted more time to training at the Orlando store versus the Saint Augustine store, based on the

28   needs and experience-level of her staff.  (Anderson ¶ 2).  Other managers describe variations in

duties depending on makeup of the leadership team  (Rodriguez ¶ 3 ("[T]he make up of the leadership team changed the frequency in which I performed certain duties.  For instance, currently at San Diego, I am the only Selling and Service Manager and therefore I do all of the scheduling, whereas at the Camarillo, Anaheim and previously San Diego stores I worked with another Selling and Service Manager and so I split these duties and we took turns each performing these duties")), age of the store (Pinales ¶ 4 ("Because my Off 5th store has only been in this location for a year and a half, I have dedicated a significant amount of my time to marketing my store in the area."), and level of theft (Campbell ¶ 1 ("[Our] store is known in the company as a 'target' store, and our store has an unusually high risk of loss based on our store location.  I am frequently called upon to exercise my own judgment to assess and respond to risks of theft.")).

Because of the disparate experiences of Plaintiffs and other managers, an individualized, fact-specific inquiry is required to determine whether each manager is correctly exempt. Accordingly, Plaintiffs cannot establish that they are similarly situated to other managers for the purposes of certifying a collective action. *Hill v. R+L Carriers, Inc.*, 2011 U.S. Dist LEXIS 27997, at *15 (N.D. Cal Mar. 3, 2011) (granting decertification where the differing circumstances of each putative class member's employment situation "would require an individual inquiry into whether each of them was properly classified as exempt"); *Pfohl*, 2004 U.S. Dist. LEXIS at *27 (C.D. Cal. Mar. 1, 2004) ("[D]iffering job duties and [an] individualized inquiry to determine whether these varying duties meet the administrative exemption preclude a collective action.").

## C.   Certification Must Be Denied Even Under "First Stage" Analysis.

Even if the more "lenient" first-stage analysis applies here, certification must still be denied. A collective action can only be maintained where the class is similarly situated and was subject to a common policy or plan in a way that turns individual factual inquiries into an issue that is common to the entire class and can be resolved with common evidence. *Aguirre v. SBC Communs. Inc.*, 2006 U.S. Dist. LEXIS 22211, at *22-23 (S.D. Tex. Apr. 11, 2006) (holding that to determine whether employees are similarly situated in a mis-classification case, the court must consider employees' duties, amount of time spent on those duties, and the extent of the discretion exercised). "[E]ven at this preliminary stage, the Court must find 'some identifiable factual nexus which binds

LA1 2581873v.4

1  the named plaintiffs and potential class members together as victims' of a particular practice.

2  *Jenkins*, 2012 U.S. Dist. LEXIS at *11 (finding that Plaintiff failed to overcome the low threshold

3  requirement for obtaining conditional class certification of a proposed class of Assistant Store

4  Managers).  The existence of a common policy or practice is what logistically permits the litigation

5  of a collective action claim.  It is the thread that binds all of the plaintiffs together and gives the jury

6  or court confidence that the testimony of one person can serve to represent the testimony of many.

7      For the reasons outlined in Defendant's Opposition to Plaintiff's Motion for Class

8  Certification, Plaintiffs can not establish the requisite "nexus" such that hearing the claims of the

9  proposed collective action "together promotes judicial efficiency and comports with the broad

10 remedial policies underlying the FLSA." *Li v. A Perfect Franchise, Inc.*, 2011 WL 4635198, *5

11 (N.D. Cal. Oct. 5, 2011) (quotations omitted).  Therefore, for all the same reasons above which

12 demonstrate individualized proof will be necessary to adjudicate Plaintiff's claims, Plaintiffs are not

13 "similarly situated" even under this so-called "lenient" first-stage standard. *See Trinh v. JP*

14 *Morgan Chase & Co.,* 2008 WL 1860161, at *5 (S.D. Cal. Apr. 22, 2008) (denying motion for

15 conditional certification in a misclassification case because of "the individualized inquiries

16 involved" in proving exempt status); *Gromek v. Big Lots, Inc.*, 2010 WL 5313792, *3-4 (N.D. Ill.

17 Dec. 17, 2010) (denying motion for conditional certification in misclassification case where "opt-in

18 plaintiffs' job duties may be similar" when viewed at "a high level of generality," but the evidence

19 showed they had "different responsibilities from one another" and "different duties from day-to-

20 day") (quotations omitted).  Under any standard, certification must be denied.

21                     **IV.   CONCLUSION**

22      In order to meet their high burden for certification, Plaintiffs must establish that the

23 managers at issue are so similarly situated so that all are either properly or improperly classified as

24 exempt.  Plaintiffs' subjective and highly individualized claims do not meet this standard.  As such,

25 Off 5th requests that the Court deny certification of Plaintiffs' FLSA claims.

26 Dated: October 23, 2012                    Sidley Austin LLP

27                     By:  */s/Jennifer B. Zargarof*
                                Jennifer B. Zargarof
28                              ATTORNEYS FOR DEFENDANTS