UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DAWN TILL and MARY JOSEPHS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SAKS INCORPORATED, a Tennessee corporation; SAKS FIFTH AVENUE, INC., a Massachusetts corporation; SAKS & COMPANY, a New York corporation; and SAKS FIFTH AVENUE OFF FIFTH,<br><br>Defendants. | Case No: C 11-00504 SBA<br><br>Related to:<br>C 12-03903 SBA<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND GRANTING DEFENDANTS' MOTION TO DENY FLSA CERTIFICATION**<br><br>Dkt. 74, 80 |

This is a hybrid wage and hour state law class action under Rule 23 of the Federal Rules of Civil Procedure and a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, brought by Plaintiffs Dawn Till and Mary Josephs, on behalf of themselves and all others similarly situated, present and former Saks Fifth Avenue Off 5th ("Off 5th") employees, against Saks Incorporated, Saks & Company and Saks Fifth Avenue, Inc. (collectively "Defendants"). Plaintiffs allege that they and putative class members were misclassified as non-exempt employees and were not paid overtime wages in violation of state and federal laws.

//

The parties are presently before the Court on Plaintiffs' Motion for Class Certification, which seeks to certify a California class of present and former Off 5th Assistant Managers, Women's Department Managers, Team Merchandise Managers, Selling & Service Managers, Salaried Associates, and/or Exempt Associates. Dkt. 74. Also before the Court is Defendants' Motion to Deny FLSA Certification, in which Defendants seek to preclude FLSA certification of a nationwide class comprised of the foregoing positions. Dkt. 80. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES Plaintiffs' motion and GRANTS Defendants' motion, for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I. BACKGROUND

## A. OVERVIEW

Enacted in 1938, the FLSA, requires employers to pay their employees at least a specified minimum hourly wage for work performed, 29 U.S.C. § 206, and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207(a). California law likewise requires employers to pay their employees time and one-half for work exceeding forty hours per week. Cal. Lab. Code § 510(a). Both the FLSA and California law provide for exemptions from overtime compensation requirements for executive, administrative and professional employees. See 29 U.S.C. § 213(a)(1); Cal. Lab. Code § 515(a).

At issue here is the executive exemption. For purposes of the FLSA, the Secretary of Labor defines an executive employee as one: "(1) Compensated on a salary basis at a rate of not less than $455 per week ...; (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any

other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a). California's executive exemption expressly follows the FLSA and applies to any employees who manage an enterprise or a customarily recognized department or subdivision thereof, have the authority or influence to hire or fire other employees, direct the work of at least two employees, and customarily and regularly exercise "discretion and independent judgment." Cal. Code Regs., tit. 8, § 11070(1)(A)(1) (IWC Wage Order No. 7-2001).

Employees who are improperly classified as non-exempt may bring a civil action on an individual or representative basis, though the applicable procedural mechanisms for doing so differ depending on whether the claim is based on federal or state law. California law permits an aggrieved employee to bring a private action to recover unpaid wages, Cal. Lab. Code § 1194(a), and to proceed as a class action, Prince v. CLS Transporation., Inc., 118 Cal.App.4th 1320, 1328 (2004). When a state law wage and hour class action is pending in federal court, the requirements of Rule 23 are controlling. See Marlo v. United Parcel Serv., Inc., 639 F.3d 972, 947 (9th Cir. 2011). In contrast, an FLSA plaintiff may only bring a "collective action"—as opposed to a class action—on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b); Does v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000).

"A 'collective action' differs from a class action," McElmurry v. U.S. Bank Nat. Ass'n, 495 F.3d 1136, 1139 (9th Cir. 2007), and the provisions of Rule 23 are inapplicable, Genesis Healthcare Corp. v. Symczyk, 133 S.Ct. 1523, 1529 (2013). "Under [the] FLSA, a potential plaintiff does not benefit from (and is not bound by) a judgment unless he or she affirmatively *opts in* to the lawsuit. This rule is in contrast to a typical Rule 23 class action, where a potential plaintiff must *opt out* to be excluded from the class." Busk v. Integrity Staffing Solutions, Inc., 713 F.3d 525, 528 (9th Cir. 2013) (internal citations and quotation marks omitted, emphasis added). "The practice of combining a FLSA collective action and state-law class action claims in one proceeding is commonly referred to as a 'hybrid'

action." Kuncl v. International Business Machines Corp., 660 F. Supp. 2d 1246, 1248 (N.D. Okla. 2009).

### B. FACTUAL AND PROCEDURAL SUMMARY

Plaintiff Dawn Till worked as an Assistant Manager and Team Merchandise Manager for Defendants' Off 5th store in Petaluma, California, from September 2004 until approximately November 2010. First Am. Compl. ("FAC") ¶ 5, Dkt. 5. Plaintiff Mary Josephs was employed as a Women's Department Manager and Selling & Service Manager at the Petaluma Off 5th store from approximately June 2006 until December 31, 2010. Id. ¶ 6. Both allege that they primarily performed duties of non-exempt employees and were therefore misclassified as exempt and not paid overtime wages as required by California and federal law. Id. ¶ 1.

Plaintiffs filed suit in this Court on February 2, 2011, and filed a First Amended Complaint ("FAC") on March 8, 2011. Dkt. 1, 5. The FAC alleges six claims for relief, styled as follows: (1) Violation of FLSA, 29 U.S.C. § 207; (2) Violation of California Labor Code §§ 510, 1194, 1198 and IWC Wage Order(s); (3) Failure to Provide Itemized Wage Statements (California Labor Code § 226); (4) Failure to Provide and/or Authorize Meal and Rest Periods (California Labor Code § 512, 226.7, and IWC Wage Order(s)); (5) Failure to Timely Pay All Wages Due (California Labor Code §§ 201-203); (6) Violation of California Business Professions Code §§ 17200, et seq.

With regard to their claims under the FLSA, 29 U.S.C. § 216(b), Plaintiffs seek to represent a nationwide class of similarly situated employees, who are defined as follows:

> Collective Class: All persons who are or have been employed by Defendants as Assistant Managers, Women's Department Managers, Team Merchandise Managers, Selling & Service Managers, Salaried Associates, and/or Exempt Associates, or similarly titled personnel who were performing the same sort of functions as the Named Plaintiffs, at Saks Fifth Avenue Off Fifth stores, within the United States at any time from within three years prior to the filing of this Complaint, to the final disposition of this case.

FAC ¶ 15. As to all other claims, which are predicated on California law, Plaintiffs seek to certify a California class under Rule 23 defined class as follows:

> Proposed California Class: All persons who are or have been employed by Defendants as Assistant Managers, Women's Department Managers, Team Merchandise Managers, Selling & Service Managers, Salaried Associates, and/or Exempt Associates, or similarly titled personnel who were performing the same sort of functions as the Named Plaintiffs, at Saks Fifth Avenue Off Fifth stores, in the State of California at any time within four years of the filing of this Complaint until the final disposition of this case.

Id. ¶ 22.

Plaintiffs now move for class certification under Rule 23(a) and (b)(3) with respect to their California law claims. Defendants oppose Plaintiffs' motion for class certification, and, in a separate motion, preemptively move to deny FLSA certification of a nationwide class. Both motions have been fully briefed and are ripe for determination.

## II. MOTION FOR CLASS CERTIFICATION

### A. LEGAL STANDARD

The Court has the discretion to grant or deny class certification under Federal Rule of Civil Procedure 23. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir.), amended 273 F.3d 1266 (9th Cir. 2001). "As the party seeking class certification, [the plaintiff] bears the burden of demonstrating that [he] has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." Id. "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co., 593 F.3d 802, 806 (9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3). The party seeking class certification bears the burden of affirmatively demonstrating that the class meets the requirements of Rule 23. Wal-Mart Stores, Inc. v. Dukes, — U.S. —, 131 S.Ct. 2541, 2551 (2011). Class certification is proper only if the trial court has concluded, after a "rigorous analysis," that Rule 23(a) has been satisfied. Id. at 2551.

## B. RULE 23(A)

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The plaintiff must present evidence to satisfy the numerosity requirement. See Dukes, 131 S.Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties . . . ."). The failure to present evidence to show numerosity precludes class certification. See Black Faculty Ass'n of Mesa College v. San Diego Cmty. College Dist., 664 F.2d 1153, 1157 (9th Cir. 1981) (finding that there was an insufficient basis upon which to certify a class where insufficient evidence to support a finding of numerosity or any of the other requirements of Rule 23(a)).

In the instant case, Plaintiffs contend that there are thirty-nine California employees who meet their class definition. Pls.' Mot. at 10.[1] The evidentiary basis of this number is unclear, as there is no citation to the record provided in their motion. Id. In the absence of any citation to the record, the Court is unable to confirm whether there is evidence to support Plaintiffs' contention. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (court need not consider arguments unsupported by citations to the record); Civ. L.R. 7-5(a) ("Factual contentions made in support of … any motion must be supported by an affidavit or declaration and by appropriate references to the record."). Accordingly, the Court finds that Plaintiffs have failed to carry their burden of demonstrating numerosity. See Dukes, 131 S.Ct. at 2551.

---

[1] Defendants contend that the likely number of putative class members is around sixteen, as most have either executed releases or evinced an intention to opt-out. Plaintiffs respond that Defendants' reliance on releases presents an affirmative defense that has not been sufficiently proven. Pls.' Reply. at 12-13, Dkt. 79. Because Plaintiffs have failed to meet their initial burden of presenting evidence to substantiate their claim that there are thirty-nine class members, the Court does not reach the merits of this particular issue.

**2. Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" Mazza v. American Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012) (quoting Dukes, 131 S.Ct. at 2555). "What matters to class certification is not the raising of common questions even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Dukes, 131 S.Ct. at 2555 (alteration and internal quotation marks omitted). To demonstrate that the examination of the class claims would produce a "common answer to the crucial question" at issue, the plaintiffs must present "significant proof" that the employer operated under a "general policy." Wang v. Chinese Daily News, -- F.3d --, 2013 WL 4712728, at *4 (9th Cir. Sept. 3, 2013) (citing Dukes, 131 S.Ct. at 2252-53). "Dissimilarities within the proposed class may 'impede the generation of common answers.'" Id. "If there is no evidence that the entire class was subject to the same allegedly discriminatory practice, there is no question common to the class." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983 (9th Cir. 2011).

Plaintiffs point to a single common question—namely, whether the job duties of Assistant Managers qualify for the executive exemption under California law. Pls.' Mot. at 11. They further contend that the answer to that question can be shown by common proof consisting of the following: (1) inadequate labor budgets which required Assistant Managers to "pick up the slack" by performing non-exempt functions; (2) corporate directives regarding merchandise displays which stripped managers of their discretion and judgment; (3) the expectation that customer service is the "number one priority," which, in turn, resulted in Assistant Managers performing primarily non-exempt duties; (4) Defendants' alleged knowledge that Assistant Managers performed non-exempt functions as part of their primary duties; and (5) the fact that Assistant Managers did not manage a department or subdivision at Off 5th such that they would be properly

characterized as exempt employees. Id. at 11-12. The Court addresses these contentions seriatim.

**a) Budget Constraints**

Plaintiffs allege that budgetary constraints resulted in a shortage of hourly workers, which, in turn, caused them to perform primarily non-exempt tasks. However, the evidence cited in support of this claim is anecdotal and non-specific. See Ledger Ryan Decl. ¶ 10, Dkt. 46; Pirkle Decl. ¶ 9, Dkt. 53. Indeed, there is no specific evidence that Defendants' labor budgets had any effect on the actual tasks performed by Assistant Managers on a class basis. To the contrary, Defendants' labor budgets varied from store-to-store, depending on a variety of factors, including sales volume, square footage, store hours, the number of entrances and the store's location. Zargaroff Decl. Ex. E (Marone Depo.) at 59:4-16; 60:7-17, Dkt. 78-1.

There also is conflicting evidence regarding the experience of putative class members *working at the same store*. Compare Lunz Decl. ¶ 13, Dkt. 38 ("I was constantly required to be on the sales floor to complete non-exempt tasks due to frequent labor shortages") with Kaminskas Supp. Decl. ¶ 5, Dkt. 78-2 ("I never felt like I needed to step in and perform associate-level duties because we did not have enough staff or payroll hours."); see also Zargarof Decl. Ex. I (A. Rodriquez Depo.) at 94:16-95:22, Dkt. 78-1; Chavarin Decl. ¶ 8, Dkt. 78-2; M. Rodriguez Supp. Decl. ¶ 5, Dkt. 78-3. Given the record presented, the Court is not persuaded that Plaintiffs' anecdotal evidence regarding an allegedly insufficient labor supply is representative of other class members.

**b) Merchandising**

Plaintiffs' showing with regard to merchandising tasks fares no better. Plaintiffs cite the declarations of two former employees who state that they were required to perform merchandising tasks (i.e., moving and replenishing stock onto the sales floor) in accordance with "detailed directives" provided by Defendants' corporate office. See Stewart Decl. ¶ 6, Dkt. 47; Dahlkoetter Decl. ¶ 6, Dkt. 51. However, the existence of such directives—the specific content of which is not disclosed—does not show that class members necessarily

were required to spend any particular amount of time performing such duties. Nor do they show that class members were divested of discretion and independent judgment. Kaminskas Supp. Decl. ¶ 8; Zagaraoff Decl. Ex. J (Cronin Depo.) at 66:13-68:17, Dkt. 78-1. Indeed, some managers spent no time on merchandising functions. Zagaraoff Decl. Ex. H ("Lunz Depo.") at 42:3-4, Dkt. 78-1. Plaintiff has thus failed to make a compelling showing that there is common proof that corporate directives relating to store merchandising resulted in class members performing mostly non-exempt tasks.

**c) Commitment to Customer Service**

Plaintiffs contend that Defendants' commitment to making customer service a "number one priority" necessarily "caused" putative class members to perform primarily non-exempt work. The evidence cited by Plaintiffs does not support this claim. Former manager Chad Dahlkoetter simply states that he often had to perform non-exempt tasks normally handled by sales associate when they did not show up for work or when the department was understaffed. Dahlkoetter Decl. ¶ 4. Former manager Antonio Rodriguez similarly states that he had to cover for hourly employees on their meal and rest breaks and for "no show" employees. Rodriguez Decl. ¶ 4, Dkt. 37. Notably, neither mentions any company commitment to customer service—or that such a commitment caused them to perform mostly non-exempt tasks. To the contrary, their statements merely show that, on occasion, they provided support on the sales floor when needed. Zargarof Decl. Ex. C (Magbag Depo.) at 45:14-46-6, Dkt. 78-1; Zargarof Decl. Ex. D (Shimmon Depo. at 44:23-45:21, Dkt. 78-1. Plaintiffs' evidence does not show that Defendants' commitment to customer service resulted in putative class members having to perform primarily non-exempt functions on a classwide basis.

**d) Knowledge**

Next, Plaintiffs aver class treatment is warranted based on Defendants' alleged "knowledge that Assistant Managers in fact perform non-exempt functions as their primary job duties." Mot. at 12. As an initial matter, it is unclear how such alleged knowledge is relevant to showing that there are "common answers" to the salient issue of whether

Plaintiffs and class members were misclassified. In any event, the evidence cited by Plaintiffs does not support their contention. Former manager Lisa Cano merely opines that her store manager and regional vice-president "were aware" that she performed the same duties as hourly employees "on a regular basis." Cano Decl. ¶ 13, Dkt. 39. Ms. Cano does not recite the foundation of her assertion that they had such awareness—nor is she in a position to testify as to the state of mind of the unidentified store manager and regional vice-president. Moreover, there is contrary record evidence from Plaintiffs' manager, who states that, based on his observations, Plaintiffs spent between 50% and 70% of their time performing managerial duties. Bseiso Decl. ¶ 3, Dkt. 81. Other former managers have made statements under oath to the same effect. Wing Decl. ¶ 2; McCann Decl. ¶¶ 9, 11. Plaintiffs' claim that Defendants knew class members were performing primarily non-exempt tasks is therefore unsubstantiated.

**e) Management Responsibility**

One of the requirements for the executive exemption under California law is that the employee's duties and responsibilities involve management of the enterprise or a "customarily recognized department or subdivision thereof." See Cal.Code Regs., tit. 8, § 11040(1)(A)(1). California courts have held that this requirement may be satisfied where the employee manages "a shift of specific workers, performing the same primary function as a permanent unit operating within a larger organizational structure, and recognized and supervised as such within that organization." In re United Parcel Serv. Wage and Hour Cases, 190 Cal. App. 4th 1001, 1017 (2010).

Plaintiffs contend no Assistant Manager manages a department of subdivision of Off 5th. Pls.' Mot. at 12. Plaintiffs fail to provide any citation to the record, cite any decisional authority or provide any reasoned analysis to support this particular contention. See Indep. Towers of Wash., 350 F.3d at 930 ("It is [the movant's] burden . . . to present the court with legal arguments to support its claims"). That aside, Plaintiffs overlook that the record, in fact, shows that such managers manage a shift of specific workers who perform the same primary function and operating with a larger organizational structure. E.g., Barber Decl.

¶ 4, Dkt. 78-2; Chavarin Decl. ¶ 4; Gidding Decl. ¶ 4, Dkt. 78-2; Hayes Decl. ¶ 47, Dkt. 78-2; Heaton Decl. ¶ 4, Dkt. 78-2.

In sum, the Court finds that there are significant dissimilarities in terms of the experiences of proposed class members that impede the generation of common answers. The disparities in the alleged practices attributed to Defendants militates against finding that there is a question common to the class. See Wang, 2013 WL 4712728, at *4.

**3. Typicality**

Rule 23(a)(3) requires the plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs contend that they meet the typicality requirement because they "have been employed by Defendants in the same capacities as the members of the proposed class." Pls.' Mot. at 13. As discussed above, however, the experiences of the two Plaintiffs compared to those of the class appear to diverge significantly. Although Plaintiffs need not show that their claims are identical to all class members, their evidence shows, at most, that their experiences are typical of only *some* of the proposed class members. The Court therefore finds that Plaintiffs have not satisfied the requirements of Rule 23(a)(3). E.g.,Washington v. Joe's Crab Shack, 271 F.R.D. 629, 637 (N.D. Cal. 2010) (finding that plaintiff's showing of typicality was "inconclusive" where there were conflicting declarations submitted regarding whether his claims were reasonably co-extensive with some absent class members) (Hamilton, J.).

//

**4. Adequacy**

The final requirement under Rule 23(a) is that the representative party must fairly and adequately represent the interests of the proposed class. Fed. R. Civ. P. 23(a)(4). "Adequate representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1995) (internal quotations omitted). With regard to the sharing of interests, the Supreme Court has "repeatedly held that a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." Gen. Tel., 457 U.S. at 156 (internal quotations and citations omitted); see also Sosna v. Iowa, 419 U.S. 393, 403 (1975) ("A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court.").

Plaintiffs assert that they are part of the proposed class of Off 5th Assistant Managers, that they have suffered the same injury of all allegedly improperly classified exempt employees and that their counsel is qualified. Pls.' Mot. at 13-14. As discussed in more detail above, Plaintiffs have failed to show that they share the same interests and have suffered the same injury as the class. Plaintiffs therefore have not satisfied the adequacy requirement.

**5. Summary**

The Court finds that Plaintiffs have failed to satisfy the commonality, typicality and adequacy requirements of Rule 23(a), which is fatal to their motion for class certification. See Comcast Corp., 133 S.Ct. at 1432 (noting that Plaintiff must satisfy all four requirements of Rule 23(a)). But even if each of the requirements of Rule 23(a) were satisfied, the Court finds, for the reasons stated below, that Plaintiffs have also failed to demonstrate that class certification is appropriate under Rule 23(b)(3).

**C. CERTIFICATION UNDER RULE 23(B)**

Under Rule 23(b)(3), a class may be certified if the district court "finds that the questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). There are thus two prongs to Rule 23(b)(3): predominance and superiority. Hanlon, 150 F.3d at 1022-23. The plaintiff bears the burden of establishing both prongs. Zinser, 253 F.3d at 1186.

**1. Predominance**

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Wang, 2013 WL 4712728 at *5 (quoting Hanlon, 150 F.3d at 1022).[2] "[T]he district court can certify a class under Rule 23(b)(3) only if it first . . . determines that plaintiffs meet the commonality requirement under Rule 23(a)." Id. As set forth above, Plaintiffs have failed to satisfy the commonality requirement. That failure alone forecloses certification under Rule 23(b)(3). Id.

Notwithstanding the above, Plaintiffs have failed to meet their burden of satisfying the predominance requirement. In assessing predominance, the Court looks not solely to the employer's policies, but also to whether there were any variations in the employees' job duties. For instance, in In re Wells Fargo Home Mortgage Overtime Pay Litigation, 571 F.3d 953 (9th Cir. 2009), the Ninth Circuit reversed the district court's class certification order based on its "heavy reliance" on an employer's uniform exemption policy, since there were "serious issues regarding individual variations among [employees'] job duties and experiences." Id. at 955. Following In re Wells Fargo, the court in Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935 (9th Cir. 2009) confirmed that "a district court abuses its discretion in relying on an internal uniform exemption policy to the near exclusion of other factors relevant to the predominance inquiry." Id. at 945. The Vinole court explained that "[u]nder California law, a court evaluating the applicability of the outside salesperson

[2] "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." Comcast Corp. v. Behrend, —— U.S. ——, ——, 133 S.Ct. 1426, 1432 (2013).

exemption must conduct an individualized analysis of the way each employee actually spends his or her time, and not simply review the employer's job description." Id.; accord Wang, 2013 WL 4712728 at *5.

Plaintiffs argue that the common question—namely, whether the job duties of Off 5th Assistant Managers satisfy California's executive exemption test—together with the five factors of common proof, predominate over any individual issues. Pls.' Mot. at 15-16. However, for each instance of "common proof" posited by Plaintiffs, there is conflicting evidence regarding the actual experiences of Assistant Managers; some claim their duties were affected by Defendants' policies and practices, while others state the precise opposite. Compare e.g., Zargarof Decl. Ex. B (Josephs Depo.) 262:15-19 (stating majority of Plaintiffs' time was spent on non-exempt tasks), and Lunz Depo. at 42 ("There was no opportunity [to leave the store] because I was on the sales floor as a salesperson") with Kaminskas Supp. Decl. ¶ 5 ("I never felt like I needed to step in and perform associate-level duties because we did not have enough staff or payroll hours") and Lopez. Supp. Decl. ¶ 6 (stating Assistant Manager Lopez spent her time performing exempt tasks such as managing associates). Notably, the necessity of the individualized inquiry is demonstrated by the Assistant Managers who report diametrically opposed experiences while working *in the same store at the same time*. Compare Lunz Depo. at 42 with Kaminskas Supp. Decl. ¶ 5. In view of this conflicting record, the Court finds that Plaintiffs have failed to show that this case satisfies the predominance requirement.

**a) Superiority**

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case. . . . This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023. The court must evaluate whether a class action is a superior method of adjudicating plaintiff's claims by evaluating four factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation

concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Zinser, 253 F.3d at 1190-92 (discussing Rule 23(b)(3)(A)-(D)).

Plaintiffs argue that a class action is superior because of (1) employees' fear of reprisal, (2) costs of individual litigation and (3) concentrating litigation in a single forum. Mot. at 23-25. These contentions are unavailing. First, California law prohibits retaliation, by discharge or other discrimination, against any employee for exercising rights protected by the Labor Code. Cal. Lab. Code § 98.6; see also id. § 98.7 (providing that aggrieved employees may file a complaint with the Labor Commissioner if one believes such discharge or discrimination has occurred).[3] Second, the cost savings resulting from proceeding on a class basis is undermined by the presence of individualized issues regarding individual class members. Zinser, 253 F.3d at 1192 ("If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'"). Finally, beyond stating the ipse dixit that it is preferable to concentrate the litigation here, Plaintiffs offer no particular explanation of why that is so. See Zinser, 253 F.3d at 1191-92 (Rule 23(b)(3)(D) not met where "[plaintiff] offers no adequate justification for the concentration of the litigation in this particular forum."). The Court therefore finds that Plaintiffs have failed to show superiority within the meaning of Rule 23(b)(3).

## III. MOTION TO DENY FLSA CERTIFICATION

The decision as to whether to certify a collective action is within the discretion of the district court. Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 534 (3rd Cir. 2012); Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 535 (N.D. Cal. 2007). The FLSA allows an employee to bring a "collective action" on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). Although the FLSA does not define "similarly situated," federal courts

[3] It is unclear whether fear of reprisal is germane to demonstrating superiority, as Zinser makes no mention of it. 253 F.3d at 1190-92.

have generally adopted a two-step approach to determine whether to permit a collective action. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008); Sanchez v. Sephora USA, Inc., No. C 11-3396 SBA, 2012 WL 2945753, at *2 (N.D. Cal. July 18, 2012).

The first step, often referred to as the "notice stage," involves an initial judicial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether an FLSA violation has occurred. Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010).[4] "To grant conditional certification at this stage, the court requires little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." Stanfield v. First NLC Fin. Servs., LLC, No. C 06-3892 SBA, 2006 WL 3190527, at *2 (N.D. Cal., Nov. 1, 2006) (internal quotations and citations omitted). "[A] low standard of proof [applies] because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." Myers, 624 F.3d at 555.

At the second step—typically initiated by a motion to decertify after discovery is complete—the court engages in a more searching inquiry. Leuthold, 224 F.R.D. at 466. "At this point, the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity." Morgan, 551 F.3d at 1261. "Should the court determine on the basis of the complete factual record that the plaintiffs are not similarly situated, then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice." Id. "This second stage is less lenient [than the first], and the plaintiff bears a heavier burden." Id.

Where the plaintiffs have not yet sought conditional certification of an FLSA collective action, as is the case here, the defendant may preemptively move to deny certification. C.f. Vinole, 571 F.3d at 939-941 (9th Cir. 2009) (holding that defendants may move to deny class certification under Rule 23 prior to the plaintiffs' filing of a motion to

---

[4] "This first step is also referred to as conditional certification since the decision may be reexamined once the case is ready for trial." Id.

certify); England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 506 (M.D. La. 2005) (granting defendant's motion to reject conditional certification of a collective action). In addition, the Court may commence the FLSA certification analysis at the second stage to the extent that the parties have had the opportunity to engage in substantial discovery. See Smith v. T-Mobile USA, Inc., No. CV 05-5274 ABC (SSx), 2007 WL 2385131 at *4 (C.D. Cal. Aug. 15, 2007) ("Where substantial discovery has been completed, some Courts have skipped the first-step analysis and proceeded directly to the second step."). A district court's decision regarding FLSA certification is discretionary, particularly at the second stage where the standard is less lenient than the first. Morgan, 551 F.3d at 1261.

At the second stage of the FLSA certification inquiry, the salient question is whether there is sufficient factual support to establish "whether the plaintiff employees are similarly situated to one another." Morgan, 551 F.3d at 1262. In making that determination, the Court may consider: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the plaintiffs; and (3) fairness and procedural considerations. Id. These factors weigh against certification.

The factual record confirms the disparate experiences of putative class members, which vary by store and individuals within the same store. In addition, some of the putative FLSA plaintiffs may be subject to releases, which Plaintiffs acknowledge is an individualized defense. Lastly, Plaintiffs have not identified any particular fairness and procedural considerations that justify permitting Plaintiffs to proceed on their FLSA claims on a collective action basis. See Hernandez v. United Auto Credit Corp., No. C 08-3404 RMW, 2010 WL 1337702, at *5 (N.D. Cal. Apr. 2, 2010) (granting motion to decertify conditional FLSA class due to the "substantially different employment experiences among the [putative class]" such that "the procedural advantages of a collective action cannot be realized."). The Court concludes that this action should not proceed collectively and therefore GRANTS Defendants' motion to deny FLSA certification.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Plaintiffs' Motion for Class Certification is DENIED.

2. Defendants' Motion to Deny FLSA Certification is GRANTED.

3. This Order terminates Docket 74 and 80.

IT IS SO ORDERED.

Dated: September 30, 2013

SAUNDRA BROWN ARMSTRONG
United States District Judge